UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:25-CR-00095-DCLC-CRW |
| | ) | |
| v. | ) | |
| | ) | |
| BENJAMIN MONROE COLLINS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Benjamin Monroe Collins' Motion to Suppress Search Warrant [Doc. 42] and Motion to Suppress Statements [Doc. 43]. The Government has responded in opposition to both, and the Court held oral argument on the motions on April 23, 2026. For the following reasons, these motions are **DENIED**.

**I.      Motion to Suppress [Doc. 42]**

**A.      Background**

On May 22, 2025, a general sessions judge issued a search warrant for Defendant's home, located at 106 Perry Avenue, Morristown, Tennessee. An affidavit by Detective Corporal Pete Shockley with the Morristown Police Department formed the basis for the search warrant. The affidavit included, in part, the following pertinent facts:

> 2. In January 2025 the Narcotics and Vice Division with Morristown Police Department received information from a reliable source of the possible sale of narcotics from Mr. Benjamin Monroe Collins from his home at 106 Perry Ave. They did begin an active investigation on Mr. Collins and the residence.
>
> 3. Also during the month of January 2025 Detectives were able to positively identify Mr. Collins as a resident at 106 Perry Ave. Morristown, TN. They notice "traffic" at the residence. People would come and stay for a short time and leave.

1

4. During the month of February 2025, Detectives made a traffic stop on individuals and did locate small amounts of meth. They did confirm that they bought meth at 106 Perry Ave., Morristown, TN.

5. In March 2025 Detectives made another stop and did locate meth off an induvial [sic] that stated he bought meth at 106 Perry Ave., Morristown TN. We did notice that we had not noticed Mr. Collins at the residence or outside. They later learned that he may be in jail in another county. That led investigators to believe Mr. Collins was not the only one selling from that residence.

6. In May of 2025 patrol officers with the Morristown Police Department were at 106 Perry Ave. Morristown Tn and arrested some individuals that were not supposed to be at the residence by court order. While there they saw some drug paraphernalia in plain view. Which made them believe that narcotics may have been in the residence as well. They were not allowed to search the residence for narcotics.

7. On May 22, 2025, Detective Corporal Shockley had K9 Officer make a traffic stop on a vehicle that left 106 Perry Ave. Morristown TN. Inside that vehicle that was lawful stopped Officers did locate over 430 grams of meth, over 20 grams of suspected heroin, 11 grams of marijuana, over 30 pills. The suspect did admit he picked the drugs up at the residence and was taking them out of the residence because Mr. Collins was incarcerated at the Hamblen County Sheriff Department. This investigator did not believe the "story" made sense to him. Which led him to believe that more drugs, drug paraphernalia, or money from drug transaction could still be stored inside the residence.

[Doc. 42-1]. Defendant moves to suppress approximately 15 grams of methamphetamine seized from his residence at 106 Perry Ave., Morristown, Tennessee, during the execution of a search warrant on May 22, 2025. [Doc. 42]. He raises three grounds: (1) the affidavit in support of the warrant was insufficient to establish probable cause; (2) the affidavit lacked a probable cause nexus connecting any drug activity to him personally; and (3) the search was conducted before the warrant was validly issued, based on a discrepancy in the issuance date on the warrant's face. The government opposes on all grounds. [Doc. 50].

**B.      Analysis**

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. A search must be executed pursuant to a valid warrant supported by probable cause. *See Katz v. United States*, 389 U.S. 347, 357 (1967). Probable cause "exists when there is a 'fair

2

probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (citations omitted); *see United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (requiring a "nexus between the place to be searched and the evidence sought") (quoting *United States v. Van Shutters,* 163 F.3d 331, 336–37 (6th Cir. 1998)).

"[W]here an affidavit is the basis for a probable cause determination, that affidavit 'must provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Helton*, 314 F.3d at 819 (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)).  The Court looks only to the four corners of the affidavit. *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016).  However, "rather than [conducting] a line-by-line scrutiny," the Court reviews the sufficiency of the affidavit based on the "totality of the circumstances." *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001); *see also United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018) (courts read a search warrant affidavit with "a healthy dose of common sense") (quotation omitted). The issuing judge's probable cause determination is entitled to great deference and will be set aside only "if it was arbitrarily exercised." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc).

Defendant argues that the search was illegal because probable cause does not support the search warrant.  He contends that (1) the search warrant relied solely on unnamed and unreliable hearsay sources, and (2) lacked a probable cause nexus.[1]

**1. Reliability of the Informant**

Defendant argues that under the Tennessee Constitution, an affidavit relaying on hearsay

---

[1] In the motion, Defendant also raises an issue with the dates on the search warrant.  At the hearing on the motion, the parties agreed that this was no longer an issue.

3

from a confidential informant cannot establish probable cause unless it also describes the informant's basis of knowledge and credibility. *State v. Henning*, 975 S.W.2d 290, 295 (Tenn. 1998). But Tennessee law is inapplicable here. "[A] state search warrant being challenged in a federal court must be judged by federal constitutional standards." *United States v. McManus*, 719 F.2d 1395, 1397 (6th Cir. 1983) (citing *Elkins v. United States,* 364 U.S. 206, 223-24 (1960)). There is no federal requirement that the informant be identified in the affidavit. *United States v. Jackson*, 470 F.3d 299, 308 (6th Cir. 2006).

Under federal law, this Court evaluates hearsay by a confidential informant "as part of the totality of the circumstances." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (quoting *Helton*, 314 F.3d at 819). And the Sixth Circuit has made clear that an affidavit based on an anonymous tipster's information can support a finding of probable cause when it contains sufficient corroborating evidence. *See United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004) (when an affidavit contains little information about an informants' reliability, the Court looks to whether there is "sufficient corroborating information."). For instance, in *United States v. Yarbrough*, the affidavit reported that an anonymous tipster claimed the defendant was engaged in illegal drug activity at his residence. 272 F. App'x. 438, 439 (6th Cir. 2007). The Sixth Circuit concluded that the affidavit contained a sufficient degree of corroboration after police verified both innocent facts from the tip, such as the names of the occupants of the residence at issue, and not-so-innocent facts, when officers smelled marijuana emanating from the residence. *Id.* at 443-44 ("When the smell of marijuana is coupled with an anonymous tip of drug activity, probable cause exists for a search warrant."). In contrast, in *United States v. Helton*, officers did not corroborate information from an anonymous tipster, whose information was two months old and two or three degrees removed from the affiant. 314 F.3d 812, 822 (6th Cir. 2003). The Sixth Circuit concluded,

4

upon consideration of the totality of the circumstances, that these circumstances did not support a finding of probable cause. *Id.* at 823.

This case is much closer to *Yarbrough* than *Helton*, as the affidavit here contains multiple instances of independent corroboration of the initial tip. Investigators identified Defendant as a resident of 106 Perry Avenue and conducted surveillance, observing traffic patterns consistent with narcotic sales, that is, short visits by individuals coming and going from the residence. Defendant notes that there were four residents at 106 Perry Avenue, and there is sure to be traffic when there are lots of people in a single area. But the investigators did not end the investigation there. They conducted two traffic stops approximately a month apart where different individuals stated they purchased methamphetamine at 106 Perry Avenue. The second of these stops occurred in March 2025, when Defendant was incarcerated. This led investigators to reasonably conclude that someone other than Defendant was also selling drugs out of the residence.

These traffic stops alone corroborate the initial tip, but the affidavit goes even farther. When officers were present inside the home on an unrelated incident, they noticed drug paraphernalia in plain view, which shows a direct link between the home and ongoing drug activity. Lastly, the affidavit describes a May 22, 2025, traffic stop where the driver claimed he was taking a significant amount of drugs out of the house because Defendant was incarcerated. Shockley did not believe the driver was truthful and thought there might be more drugs at the home. That same day, he obtained a search warrant to search the residence.

Defendant attacks the May 22 traffic stop as a "hunch." But the driver admitted that the drugs came from 106 Perry Avenue. Shockley's inference that additional drugs, paraphernalia, or proceeds remained at the residence was reasonable in light of his own prior knowledge that someone other than Defendant was distributing methamphetamine from the residence. This final

5

traffic stop was but one of multiple incidents that corroborated the initial tip that drugs were being sold out of 106 Perry Avenue. While the affidavit contained no information about the initial tipster's reliability, it included sufficient corroborating information, under the totality of the circumstances, to support a finding of probable cause.

### 2. Probable Cause Nexus

Moving to the probable cause nexus, the affidavit provided a sufficient nexus between 106 Perry Avenue and the presence of illegal drugs, drug paraphernalia, and drug proceeds. The "critical element ... is ... that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)). When determining whether to issue a search warrant, a judge is "entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Caicedo,* 85 F.3d 1184, 1192 (6th Cir. 1996) (citations omitted).

Based on the totality of circumstances, there was probable cause to believe drugs, drug paraphernalia, or drug proceeds would be located at 106 Perry Ave. As summarized above, the affidavit set forth sufficient facts for the general sessions judge to conclude that a sufficient nexus existed between the evidence sought and the residence. Multiple individuals found with illegal drugs confirmed that they purchased or picked up the drugs at 106 Perry Avenue, as recently as the same day the search warrant was issued.[2] And officers personally saw drug paraphernalia

---

[2]     Defendant argues that the final traffic stop, conducted on May 22, 2025, is not reliable and cannot provide a probable cause nexus. Because Shockley did not believe the driver's story that he took the drugs from the home, Defendant argues that he acted on a "hunch" when executing the affidavit.

6

inside the home.  This indicates that there was a sufficient nexus between 106 Perry Ave. and illegal drugs.

While these facts may not necessarily implicate Defendant himself in any illegal activity, the facts directly link his home to drug sales, drug paraphernalia, and significant quantities of drugs.  Probable cause only requires that "there is a 'fair probability,' … that contraband or evidence of a crime will be found in a particular place," *Greene*, 250 F.3d at 479 (citation omitted), not that a defendant is suspected of a crime or tied to the particular place. *United States v. McIntosh*, 109 F. App'x 65, 71 (6th Cir. 2004).  That Defendant himself was not implicated by the affidavit's corroborating evidence does not matter when evaluating whether the search warrant was valid.

The Court concludes that probable cause supported the search warrant.  Consequently, the Court need not address whether the good-faith exception to the exclusionary rule applies. *United States v. Dyer*, 580 F.3d 386, 393 (6th Cir. 2009).  The motion to suppress the search warrant [Doc. 42] is **DENIED**.

## II.     Motion to Suppress Statements [Doc. 43]

### A. Background

On or about May 25, 2025, Defendant was detained at the Hamblen County Jail on state charges unrelated to the current case when Shockley and Special Agent Thomas Garrison with the Tennessee Bureau of Investigations met with Defendant and his local counsel, Ryan Louge, at the jail.  Defendant requested to speak privately with his counsel before any interview with the investigators.  Because of this, the investigators did not interview Defendant that day.  Sometime later, Louge contacted the investigators and confirmed that Defendant was willing to speak with them.

7

On May 30, 2025, Shockley and Garrison returned to the jail. They advised Defendant that they were there because Louge had advised them that Defendant wanted to speak to them. They advised him of his *Miranda* rights, which Defendant acknowledged he understood and executed a written waiver. Defendant then discussed details about his distribution of methamphetamine. He identified two sources used by his son, described the quantities his son was procuring, and provided the investigators his wife's phone number so investigators could contact her during the interview to obtain a co-conspirator's name that Defendant had forgotten. When the investigators pressed him for details about his son's involvement, Defendant terminated the interview.

Defendant moves to suppress his statement of May 30, 2025 on three grounds: (1) his waiver was involuntary due to opioid withdrawal; (2) investigators coerced him by misrepresenting that his attorney had approved the interview without counsel present; and (3) his mental condition on May 30 rendered him incapable of a knowing and intelligent waiver.

**B. Analysis**

**1. Right to Counsel**

The Sixth Amendment does not attach until a criminal "prosecution is commenced," *Gaetano v. United States*, 942 F.3d 727, 732 (6th Cir. 2019)(quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)). The right attaches only upon the initiation of formal adversarial proceedings, and it does not extend from a charged offense to a separate, uncharged offense even where the offenses are factually related. *Texas v. Cobb*, 532 U.S. 162, 167-68 (2001).

When Defendant spoke with the investigators, he was incarcerated on state charges unrelated to the federal charges he faces now. As of May 30, 2025, no federal charges had been filed. Defendant's initial appearance in this Court did not occur until September 25, 2025. The Sixth Amendment right to counsel had not attached as to the federal investigation when Schockley

and Garrison conducted the May 30 interview. The interview did not violate Defendant's right to counsel.

## 2. Voluntariness of the Waiver and Statement

A motion to suppress statements made during a custodial interrogation presents two questions: whether the defendant's waiver of his *Miranda* rights was valid, and whether the resulting statements were voluntary. *See Miranda v. Arizona*, 384 U.S. 436, 467 (1966); *Mincey v. Arizona*, 437 U.S. 385, 398 (1978). "To be valid, waivers of Fifth Amendment rights must be 'voluntarily, knowingly and intelligently' made." *United States v. Montgomery*, 621 F.3d 568, 573 (6th Cir. 2010) (quoting *Miranda*, 384 U.S. at 444). This occurs when the waiver is "the product of a free and deliberate choice rather than intimidation, coercion, or deception" and is made knowingly and intelligently, "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

A statement is involuntary only if obtained through coercive conduct. To find officials' conduct coercive, the conduct must have been "objectively coercive," which "was sufficient to overbear the defendant's will," and the officials' actions must have been "the crucial motivating factor in the defendant's decision to speak." *United States v. Guerrero*, 168 F.4th 454, 461 (6th Cir. 2026) (citations omitted). Courts consider the length of the questioning, the repeated and prolonged nature of the questioning, and the use of physical punishment, such as the deprivation of food or sleep when determining whether conduct was coercive. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). When a defendant claims that a confession was coerced, the Government bears the burden of proving by a preponderance of the evidence that the confession was made voluntarily. *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999).

9

Defendant argues that the investigators misrepresented to him that Louge had authorized the interview to proceed without counsel present. The factual premise of his argument is not supported by the record. The record establishes that Louge met with Defendant at the jail, then contacted Shockley and Garrison and confirmed that Defendant was willing to be interviewed. The investigators' representation on May 30, that Defendant's attorney had advised them that Defendant wanted to speak with them was accurate. There was no misrepresentation, and the coercion theory fails as a factual matter.

Defendant, who has a long criminal history and is well-versed in his rights, is the only one whose consent was necessary. Additionally, both Shockley and Garrison testified that the interview lasted approximately thirty-to-forty-five minutes and, critically, ended as soon as Defendant chose to exercise his constitutional rights and terminated the interview. This shows that Defendant was both aware of his rights and capable of exercising them.

### 3. Knowing and Intelligent Waiver

Defendant also argues that neither his waiver nor his statement was made knowingly or intelligently because he was suffering opioid withdrawals at the time. That challenge implicates the second *Moran* prong rather than voluntariness in the coercion sense. A waiver is knowing and intelligent when made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421. Impairment that prevents such awareness can defeat the waiver, but the relevant inquiry is the defendant's actual condition at the time of the interrogation, not his condition at some other point in time.

In support of this argument, Defendant points to Magistrate Judge Wyrick's *sua sponte* decision at Defendant's initial appearance and arraignment on September 25, 2025 to send him for a competency evaluation. On December 18, 2025, Defendant was determined to be competent.

10

The report noted that Defendant would have significant withdrawal symptoms and would get physically ill if he did not have access to illegal substances or medication to treat his Opioid Use Disorder. It also noted that his mental status could change if he was off his medication or resumed use of illegal substances. The report did not address Defendant's actual condition on May 30. On that day, Defendant had been in jail for approximately five days and was not taking medication at that time. But there are no indications that Defendant was suffering from withdrawal symptoms on that day. Both Shockley and Garrison testified that he did not present any signs of impairment, such as slurred speech, dilated pupils, nodding off, or not making sense. Neither had any cause for concern about Defendant's physical or mental status during the interrogation. Additionally, Defendant met with his attorney after he was incarcerated, and his attorney did not inform Shockley or Garrison of any health or competency related concerns. And while Defendant points to the decision in September to send Defendant for a competency evaluation, there was a four-month gap between the interrogation in May and his initial appearance in September. That there were concerns about his ability to knowingly and voluntarily proceed in September says nothing about his abilities in May.

Moreover, Defendant invoked his *Miranda* rights when he chose to end the interrogation after being asked about his son. This shows that Defendant knew what his rights were and knew the consequences of his decisions to waive and not waive those rights. The officers were not faced with an incoherent or non-lucid person when they interrogated Defendant. Instead, Defendant appeared in fine health, was capable of answering questions about the details of his operation, and enforced his own will by invoking his rights to end the interrogation. These facts lead the Court to conclude that Defendant offered his waiver and statement voluntarily.

Based on the totality of the circumstances surrounding the interrogation, the facts reveal that there was no coercion by the investigators, and that Defendant offered both his statement and *Miranda* waiver knowingly, intelligently, and voluntarily.  Therefore, the motion to suppress statements [Doc. 43] is also **DENIED**.

       **SO ORDERED:**

s/Clifton L. Corker
United States District Judge